IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BEATRICE L. CRUZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:15-CV-0590-D |
| | § | |
| JIM MATTIS, Secretary, | § | |
| Department of Defense, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Beatrice L. Cruz ("Cruz") sues defendant Jim Mattis, Secretary, U.S. Department of Defense ("the Secretary"), to recover under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, based on her demotion from a GS-13 supervisory contract specialist position. She contends that the demotion was based on her race and sex, and was retaliatory. The Secretary moves for summary judgment on these claims, and Cruz moves for partial summary judgment on certain of the Secretary's affirmative defenses. For the reasons that follow, the court grants the Secretary's motion, denies Cruz's motion as moot, and dismisses this action with prejudice by judgment filed today.

I

Cruz is a Hispanic employee of the Defense Contracting Management Agency

("DCMA"), a division of the Department of Defense.[1]  She began working in a supervisory

role at DCMA at the Waco office in September 2012, subject to DCMA's standard one-year

supervisory probation period.[2]  This role was Cruz's first as a supervisor.

When Cruz began working at the Waco office, she entered an already dysfunctional

work environment plagued by a lack of experience, clear procedures, and trust.  Cruz initially

received positive reviews.  In her January 30, 2013 evaluation, she was given an overall

rating of "fully successful" for the first three months of her work.[3]  But around the time of

this first evaluation, the overall perception of Cruz in the Waco office began to erode.  In

general, Cruz described herself as "tired and overwhelmed," D. App. 295, and, by December,

"she felt as though she had lost control" of the people she managed.  *Id*. at 267.  "She could

clearly see that there were gaps in her team's performance but was unable to close those gaps

---

[1]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[2]"5 U.S.C. § 3321 provides for 'a period of probation . . . before initial appointment as a supervisor or manager becomes final.'  It also says that a supervisor or manager 'who does not satisfactorily complete the probationary period . . . shall be returned to a position of no lower grade and pay than the position from which the individual was transferred, assigned or promoted.'"  5 C.F.R. § 315.901 (West 2017).

[3]This performance review did not include any of the events that occurred in January 2013.

due to declining relationships." *Id*.[4] Cruz's demotion relates primarily to a January 17, 2013 incident involving Marcus Gaines ("Gaines"), an African-American Contract Administrator whom she supervised. During this incident, Cruz directed that security escort Gaines from the office premises because he frightened her.[5] According to Cruz, Gaines spoke to her in "an extremely irritated and belligerent voice" with an attitude of "insubordination, belligerence, and total lack of respect." *Id*. at 577.

In response to this incident, DCMA opened an investigation into the environment at the Waco office. From February to May 2013 Mark Meadows ("Meadows"), Cruz's direct supervisor, began making a 2½ hour commute each way to Waco to provide Cruz with assistance in managing her team, although the physical distance impaired the effectiveness of his mentorship. Cruz asserted that, as part of his guidance, Meadows advised her to "act more like a man" when supervising employees. P. App. 163. The Report of Investigation

---

[4]According to a Report of Investigation prepared by Henrietta Strater Snow, entitled, "Conflicts within DCMAC-AMNAB, Hostile Workplace, Events leading to the escort of Mr . Marcus Gain[e]s from L-3," a hostile work environment was created that was not attributable to any single person. D. App. 268. The hostility was fueled by Cruz's opinion that two African-American male subordinates, Gaines and Charles McGlothen, had lied to her and been insubordinate during her tenure at the Waco office. *Id.*

[5]Cruz recounted a number of prior incidents that she found frightening. According to Cruz, in January Gaines had become defensive, raising his voice and frightening her by his demeanor when responding to her request for an email. Cruz stated in January that, two months previously, Gaines had made several alarming statements, including that he "didn't like gays," and that "his training in the Marines taught him to hate and kill Middle Eastern people," and that "he has weapons and has no problems using them on people he doesn't like." D. App. 8-9.

concluded with advice that Cruz be provided formal mentorship and the opportunity to shadow other supervisors.[6]

After considering how to improve the tension among Waco team members, Lieutenant Colonel Ronald Tougaw ("Col. Tougaw"), Cruz's second-line supervisor,[7] decided to downgrade Cruz's rank and move her to the Dallas office. He planned to offer that, if she relocated voluntarily, he would mark in her record that this was a "voluntary transfer" rather than a demotion. On September 9, 2013 Col. Tougaw spoke to Cruz by telephone, explaining that she would be required to leave the Waco office.[8] In a follow-up email written the same day, Cruz declined to relocate for two reasons: first, she expected a position in England to be finalized by the end of the week; and, second, she expressed concern about working under a particular Dallas manager who was friends with Meadows. Cruz wrote in her email:

> I also see Dennis Hunt as a GS-15 on the Dallas chart. I had heard he was the one that conducted the investigation of [Meadows] for a comment [Meadows] made along the lines of [Meadows] having hired a woman for her "big breasts." Supposedly [Meadows] received little or no discipline for that, in part because of his friendship with Dennis Hunt. It may turn out all of this about Dennis and [Meadows] is merely untrue rumors, but either way I would want to make sure I don't end up reporting to someone close to [Meadows], so we minimize the

---

[6]The Report of Investigation also recommended: "Assist in supporting her in being comfortable with more open and face to face communication with employees." P. App. 165.

[7]Meadows is between Cruz and Col. Tougaw in the chain of command.

[8]Despite her efforts and strong technical knowledge, Meadows stated that Cruz was demoted due to issues "very specific to her being a supervisor[.]" P. App. 65.

> risk of EEO retaliation issues distracting us from focusing on the
> agency mission.

P. App. 171. Cruz also complained to Col. Tougaw about Meadows' potentially

discriminatory conduct in the Waco office:

> But I think we have a pattern in Waco of female supervisors /
> management trying to get [Gaines] to do work and [Meadows]
> always taking his side, resulting in the females giving up and
> moving on. Only time will tell whether, as I suspect,
> [Meadows] is so eager to avoid an EEO complaint by an
> African-American male ([Gaines]) that he ends up not letting
> female supervisors succeed.

*Id.*

Col. Tougaw responded the following day via email. He first addressed Cruz's

concerns about Hunt's investigation of Meadows:

> Also, I can confirm that any allegations about Mark Meadows
> that may have been investigated by Dennis Hunt were untrue
> rumors; furthermore, any insinuation that Mr. Hunt did or would
> act in a prejudiced manner is unprofessional. I am mindful of
> responding to your concerns but please understand that there are
> limited options available.

*Id.* at 169. Col. Tougaw then laid out his decision to direct Cruz's immediate demotion:

> During our conversation, I did not state that there was "no plan"
> to have you fail your supervisory probation. When I offered you
> the DCMA Dallas position and you indicated that you had
> verbally accepted a position in Europe, in the spirit of being
> amicable, I stated that if you voluntarily moved to another
> position, I would allow that decision to be documented as a job
> offer/acceptance instead of a demotion due to failure of
> supervisory probation. Although I was willing to do so at that
> time, I believe it is imperative that we not leave this hanging and
> I am proceeding with my decision to direct your immediate
> demotion.

*Id.*

Cruz received her formal notice of demotion on September 13, 2013. She worked for DCMA Dallas while living in Waco from September 16, 2013 through January 26, 2014. She then worked for DCMA in England for a period of time, and ultimately returned to the Dallas office, where she currently works.

Cruz filed the instant suit alleging claims of under Title VII for discrimination based on race and sex, and retaliation. The Secretary moves for summary judgment dismissing Cruz's claims. Cruz opposes the motion and moves to dismiss several of the Secretary's affirmative defenses.[9] The Secretary partially opposes the motion and stipulates to the dismissal of certain affirmative defenses.[10]

## II

The Secretary and Cruz each move for summary judgment on claims and affirmative defenses for which they will not have the burden of proof at trial. Accordingly, they need only point the court to the absence of evidence of any essential element of that claim or

---

[9]These are the affirmative defenses that Cruz challenges: first, Cruz fails to state a claim against the Secretary upon which relief can be granted; second, the Secretary's actions were all in good faith and based upon non-discriminatory, legitimate business reasons; third, Cruz fails to plead a prima facie case of gender or ethnicity discrimination under Title VII; fourth, Cruz fails to plead a prima facie case of reprisal under Title VII; eighth, Cruz failed to exhaust her administrative remedies; ninth, Cruz failed to mitigate damages; tenth, Cruz's claims are barred by sovereign immunity; eleventh, Cruz fails to plead damages as a result of Title VII violations; and, thirteenth, Cruz is only entitled to damages available under Title VII, which do not include exemplary and punitive damages.

[10]In response to Cruz's motion for partial summary judgment, the Secretary stipulates to the dismissal of the first, second, eighth, tenth, and thirteenth affirmative defenses.

defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the opposing party must go beyond the party's pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable trier of fact could return a verdict in the opposing party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The opposing party's failure to produce proof as to any essential element of the claim or affirmative defense renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the opposing party fails to meet this burden. *Little*, 37 F.3d at 1077.

III

The court first addresses Cruz's discrimination claim.

A

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). To prevail on her discrimination claim, Cruz must present direct or circumstantial evidence that her race and/or sex was a motivating factor for the Secretary's adverse employment action. *See, e.g., Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 648 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652

(5th Cir. 2004)) (addressing Title VII claims for race-based harassment, discrimination based on race, ethnicity, national origin, and religion, and retaliation). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc*., 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [the plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98. "Direct evidence of an employer's discriminatory intent is rare; therefore, Title VII plaintiffs must ordinarily prove their claims through circumstantial evidence." *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). Cruz does not specifically reference any direct evidence of discrimination in her motion or in her amended complaint. Thus the court holds that she is relying on circumstantial evidence to prove intentional discrimination.

B

Because Cruz relies on circumstantial evidence to support her discrimination claims, they are properly analyzed under the *McDonnell Douglas* burden-shifting framework. *See Smith v. City of St. Martinville*, 575 Fed. Appx. 435, 438 (5th Cir. 2014) (per curiam). The *McDonnell Douglas* framework consists of three stages.

First, Cruz must establish a prima facie case of discrimination, which "creates a presumption that [the Secretary] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, Cruz must show that "(1) [s]he is

a member of a protected class, (2) [s]he was qualified for the position at issue, (3) [s]he was the subject of an adverse employment action, and (4) [s]he was treated less favorably . . . than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances." *Lee v. Kan. City S. R.R.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005) (per curiam)).

Second, if Cruz establishes a prima facie case, the burden shifts to the Secretary to articulate a legitimate, nondiscriminatory reason for the employment action taken against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). The Secretary's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West*, 330 F.3d at 385.

Third, if the Secretary meets his production burden, Cruz may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (Title VII race discrimination case). Under the pretext alternative, Cruz must "offer sufficient evidence to create a genuine issue of material fact . . . that [the Secretary's] reason is not true, but is instead a pretext for discrimination[.]" *Rachid*, 376 F.3d at 312 (citation and internal quotation marks omitted). Under the mixed-motives alternative, she must offer sufficient evidence to create a genuine issue of material fact "that [the Secretary's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Cruz's] protected characteristic[.]" *Id.* (citation and internal quotation marks omitted).

"If the employee proves the unlawful reason was a motivating factor, the employer must demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." *Rachid*, 376 F.3d at 309-10 (5th Cir. 2004).

C

The Secretary contends that Cruz cannot establish a prima facie case of discrimination because, in failing to complete her probationary period satisfactorily, she cannot show that she was qualified for the supervisory role. It is unclear in the Fifth Circuit whether performance issues render an employee unqualified for a position at the prima facie stage. *See Pena v. Wyndham Anatole Hotel*, 2005 WL 1500821, at *2 (N.D. Tex. June 14, 2005) (Sanderson, J.) (comparing *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988) ("a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action") *with Sreeram v. La. State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 318-19 (5th Cir. 1999) (hospital resident did not establish that she was qualified for her position, because she received multiple poor reviews of her work in the position)).

Because the threshold for showing employee qualification is low at the prima facie stage,[11] the court holds that Cruz has made a sufficient showing that she was qualified for the

---

[11]In the age discrimination context, the Fifth Circuit has held that an employee need only show that he has not suffered a physical disability, or loss of a necessary professional license, or some other occurrence that renders him unfit for the position for which he was hired. *Bienkowski*, 851 F.2d at 1506 n.3.

GS-13 supervisory role. The fact that Cruz was hired for the supervisory position in the first place, along with initially positive performance reviews, indicate that she could perform the position. *See Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 350 (5th Cir. 2007) (holding that possessing same qualifications when hired and fired shows prima facie qualification). The nuances of whether employee performance is satisfactory are more properly settled when analyzing pretext at the third step of the analysis. *See id.* at 350-51 (noting that "evidence that [plaintiff's] supervisors were not pleased with his performance . . . does not prove a lack of qualifications at the prima facie stage"); *see also Bienkowski*, 851 F.2d at 1506 ("The lines of battle may then be drawn over the employer's articulated reason for its action and whether that reason is a pretext for age discrimination."). The court therefore holds that Cruz has met her burden of showing a prima facie case of discrimination.

D

Because Cruz has shown a prima facie case, the burden shifts to the Secretary to produce evidence of a legitimate, nondiscriminatory reason for demoting Cruz. The Secretary has introduced evidence that Cruz was demoted because she created an environment of poor communication in the Waco office. That is, the Secretary's good faith belief that she was bad at her job, not her status as a non-African-American female, led to her demotion.

The Secretary has identified evidence that a number of Cruz's supervisors voiced concerns about her ability to manage her team. Cruz's letter of demotion stated that she

lacked the requisite skills to hold a supervisory position.[12]  And the Report of Investigation

indicates that, at the very least, Cruz had been unable to close gaps in team performance and

that she would require additional mentorship to develop supervisory skills.

The court thus holds that the Secretary has met his burden of production by adducing

evidence that Cruz had encountered performance issues in her supervisory role.

E

Because the Secretary has satisfied his burden of production, the burden now shifts

to Cruz to produce sufficient evidence that would enable a reasonable trier of fact to find that

the Secretary's reason is not true, but is instead a pretext for discrimination.

---

[12]The notice stated:

> [s]pecifically, you have created an environment of poor
> communication and overall distrust between you and members
> of your staff.  You have addressed an employee's performance
> in a public forum.  You had building security [] escort an
> employee from the building because you indicated you felt
> threatened; however, the allegations of threatening behavior
> were not substantiated by witnesses to the event.  Your ability
> to communicate with one employee has deteriorated to the point
> that you are unable to conduct your supervisory duties as
> pertains to that employee.  You have been told that you must
> have effective interaction with employees in order to supervise.
> You often misquoted or misconstrued conversations that you
> have with your employees, which results in more confusion and
> miscommunication.  You often inaccurately recounted series of
> events when documenting supervisory actions and
> communicating with your supervisors.  Those circumstances
> form the basis for my decision to demote you during your
> supervisory probationary period.

D. App. 395.

The court holds that a reasonable trier of fact could only find from Cruz's evidence that she and Col. Tougaw differed in their opinions about her performance as a supervisor. Cruz's contentions that she did not receive sufficient mentorship and that the hostile work environment existed prior to her joining the Waco office do not suffice to show discriminatory intent. Even if Col. Tougaw was wrong in his assessment of Cruz's performance, "even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason . . . . [A] dispute in the evidence concerning . . . job performance does not provide a sufficient basis for a reasonable factfinder to infer that [the] proffered justification is unworthy of credence." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)) (alterations in original).

To the extent she bases her discrimination claim on her female sex, Cruz has not pointed to other evidence from which a reasonable trier of fact could infer that Col. Tougaw demoted her based on her sex. First, although a female in a supervisory GS-13 position at a Waco duty station avers that she had a similar experience with Meadows in the Waco office, her opinions about why she lost her job are merely speculative and conclusory.[13] Even assuming *arguendo* that this female was the target of sex discrimination by Meadows, her experience would not suffice to establish a pattern or practice of discrimination by the

---

[13]The former supervisor states: "I have a letter issued to me by [Meadows] and one of his minions, berating my job performance, when in fact I have always had awards and high ratings, even the prior year." P. App. 157. She also avers: "I was forced out of my job by untruths. [Meadows] issued me a letter accusing me of failures to perform my job." *Id.*

Waco office that would enable Cruz to prove pretext in her own case. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) ("A pattern or practice of discrimination does not consist of isolated or sporadic discriminatory acts by the employer.") (internal quotations and citation omitted).

Second, as evidence of discriminatory intent, Cruz points to Meadow's advice that she "act like a man" to improve her supervisory skills. P. Br. 21. "An oral statement exhibiting discriminatory animus may be used to demonstrate pretext or, as is the case here, it may be used as additional evidence of discrimination." *Laxton v. Gap Inc.*, 333 F.3d 572, 583 (5th Cir. 2003) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 (5th Cir. 2000)).[14] "The remark must, first, demonstrate discriminatory animus and, second, be made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker." *Id.*; see also *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002). The court holds that this remark made by Meadows would not alone, or in combination of Cruz's other evidence, enable a reasonable trier of fact to find that Col. Tougaw acted with discriminatory animus. And even assuming *arguendo* that the court could analyze this statement as circumstantial evidence, it would not be sufficient to create a genuine issue of material fact that would preclude summary judgment. This statement is less probative of discriminatory animus than are other statements that the

---

[14]Because Cruz appears to offer this remark as circumstantial evidence of discrimination, the court applies the two-part test from *Russell*, 235 F.3d at 225. *See Duff v. Farmers Ins. Exch.*, 2014 WL 1577786, at \*16 n.21 (N.D. Tex. Apr. 21, 2014) (Fitzwater, C. J.).

Fifth Circuit has held are insufficient to create a genuine issue of material fact in the context of age discrimination claims. *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) (holding that characterization of plaintiff as "an old fart" was insufficient to create genuine issue of material fact as to age discrimination). So despite Meadows' statement, a reasonable trier of fact could not find that Col. Tougaw demoted Cruz based on sex rather than based on the belief that she would not succeed as a supervisor.

To the extent Cruz bases her discrimination claim on her race, she has not carried her summary judgment burden. Even assuming *arguendo* that Cruz has shown a prima facie case of racial discrimination, she has failed to point to evidence from which a reasonable trier of fact could infer that her race was a motivating factor in her demotion. Cruz presents evidence of leniency toward African-Americans, particularly Gaines, in the Waco office.[15] "[P]referential treatment to another employee under 'nearly identical' circumstances" can create a genuine issue of material fact on the issue of pretext. *Siddiqui*, 731 F.Supp.2d at 653. But in this case, Gaines is not "similarly situated" to Cruz. *See id*. (describing "nearly identical" standard as "a stringent standard—employees with different responsibilities, different supervisors, different capabilities, different work rule violations, or different disciplinary records are not considered to be 'nearly identical'"). Thus the favorable treatment of Gaines would not enable a reasonable trier of fact to find that Col. Tougaw demoted Cruz based on her Hispanic race.

_____

[15]Cruz points to evidence that Gaines performed poorly at work but still received a payout to drop claims that he was a victim of discrimination.

Because a reasonable trier of fact could not find that the Secretary's proffered explanation for Cruz's demotion is a pretext for sex or race discrimination, the court grants the Secretary's motion for summary judgment and dismisses Cruz's discrimination claim.[16]

IV

The Secretary also moves for summary judgment dismissing Cruz's Title VII retaliation claim.

A

Because Cruz relies on circumstantial evidence to support her retaliation claim, she must proceed under the familiar *McDonnell Douglas* burden shifting framework.

Cruz must first demonstrate a prima facie case of retaliation by showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action. *See Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the requirement that a plaintiff show at the prima facie case stage a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that the trier of fact must find. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000

---

[16]Because the court is dismissing Cruz's discrimination claim based on her lack of evidence of pretext, it need not address the Secretary's contention that there is no liability under Title VII because Col. Tougaw, not Meadows, demoted Cruz. The court likewise need not address the Secretary's argument that Cruz failed to present evidence of damages.

WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing the prima facie case burden as "minimal").

If Cruz establishes a prima facie case, the burden shifts to the Secretary to articulate a legitimate, non-retaliatory reason for the action taken. *See Walker*, 2005 WL 2278080, at *9. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If the Secretary meets his production burden, the burden shifts back to Cruz to produce evidence that retaliation for her protected conduct, rather than the Secretary's proffered legitimate non-retaliatory reason, was the "but-for cause" of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S.Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also, e.g., Coleman v. Jason Pharms.*, 540 Fed. Appx. 302, 304 (5th Cir. 2013) (per curiam) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action." (citing *Nassar*, 133 S.Ct. at 2533-34)). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman*, 540 Fed. Appx. at 304 (quoting *Long*, 88 F.3d at 308).

B

The court holds that Cruz has shown a prima facie case of retaliation. Neither party disputes that Cruz engaged in protected activity and that an adverse employment action occurred. Cruz bases her retaliation claim on the September 9 email that she sent to Col. Tougaw following her conversation with him about her reassignment to the Dallas office.[17] In this email, Cruz rejected the offer to voluntarily transfer to Dallas, expressing hesitation about working for Hunt, and she complained about Meadows' discriminatory conduct in the Waco office. The court assumes *arguendo* that this email constitutes protected activity.

The court also notes that the adverse employment action at issue is not the reduction in Cruz's grade, but is instead the decision to demote her rather than allow her to voluntarily transfer. Even when reading the summary judgment record in Cruz's favor,[18] the evidence

---

[17]The Secretary agrees that Cruz engaged in protected EEO activity throughout the two months prior to her demotion. On July 22, 2013 she submitted a request for informal EEO counseling. On August 29, 2013 she complained that this request had not been addressed. But Cruz appears to base her retaliation claim only on the September 9 email, because she does not reference any other instance of protected activity in her response.

[18]Cruz and the Secretary disagree about whether Col. Tougaw offered to transfer Cruz to the Dallas office without a demotion in her grade. In a follow-up email regarding their September 9 conversation about Cruz's transfer to Dallas, Col. Tougaw stated: "During our conversation, I did not state that there was 'no plan' to have you fail your supervisory probation." P. App. 169. But Cruz describes Col. Tougaw as focused on "getting her out of the Waco position" and not on causing her to lose pay, grade, or supervisor probation credit, at the time of their September 9 meeting. In an email dated September 6, 2013, Col. Tougaw wrote Meadows that he planned to contact Cruz on September 9 via phone and let her know that she would be reassigned to a non-supervisory position. He further stated: "I'll explain that it is a GS-12 but that the locality pay is 6.5% higher than Waco[.]" D. App. 385. The email exchange would only permit a reasonable trier of fact to find that Col. Tougaw had already decided before the September 9 conversation that Cruz's grade would be reduced

only permits the reasonable finding that Col. Tougaw had decided to reassign Cruz to a nonsupervisory GS-12 role before she sent the email in question on September 9. Because Col. Tougaw had already decided to reduce Cruz's grade, she cannot establish causation for a prima facie case of retaliation based on the reduction in grade. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Thus the court focuses on Col. Tougaw's decision to demote Cruz rather than to allow her to voluntarily downgrade. Within 24 hours of Cruz's sending her September 9 email, Col. Tougaw responded with an email stating that it was "imperative" that he order her "immediate demotion." P. App. 124, 169. The close temporal proximity between her activity and her demotion are sufficient to establish the minimal requirement of causation at the third step of Cruz's prima facie case. *See McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (internal citation omitted) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation."). In this case, Cruz sent her email referencing her EEO activity on September 9, 2013, and Col. Tougaw informed her of her demotion one day later, on September 10, 2013. Accordingly, the court holds that Cruz has

from GS-13 to GS-12 .

shown a prima facie case of retaliation based on her demotion that followed her September 9 email.

C

Because Cruz has shown a prima facie case of retaliation, the burden shifts to the Secretary to show a legitimate, non-retaliatory reason for her demotion. The Secretary has introduced evidence that Cruz experienced challenges in her supervisory position that culminated in Col. Tougaw's decision to downgrade her. Col. Tougaw's response email indicates a desire to find a quick resolution, and is evidence that he demoted Cruz because she expressed hesitation about working in the Dallas office.[19] The court thus holds that the Secretary has met his burden of production.

D

At this stage, Cruz's retaliation claim can only survive summary judgment if she presents evidence that would enable a reasonable trier of fact to find that, but for the protected activity, Col. Tougaw would not have demoted her.[20] The Secretary maintains that,

---

[19]Col. Tougaw wrote: "I believe it is imperative that we not leave this hanging and I am proceeding with my decision to direct your immediate demotion." P. App. 169.

[20]The Secretary contends that Cruz has not shown but-for causation because she has not presented evidence that Meadows' retaliatory animus spurred Col. Tougaw's decision to demote Cruz under a "cat's paw" theory of liability. The court declines to accept this argument because, in this case, the question is whether a reasonable trier of fact could find that Col. Tougaw's own retaliatory animus was the but-for cause of his decision to demote Cruz.

because Cruz has only shown proximity of demotion and protected activity, she has not carried this burden. The court agrees.

Mere proximity generally does not suffice to establish causation at the pretext stage. *See, e.g., Dixon v. Comal Cty., Tex.*, 447 Fed. Appx. 638, 641-42 (5th Cir. 2011) ("[S]ummary judgment for defendant is proper when plaintiff presents no evidence of retaliation save temporal proximity to rebut defendant's proffered reason and overwhelming evidence that plaintiff was fired because of poor performance and improper work conduct."); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004) ("Without more than timing allegations, and based on [defendant's] legitimate, nondiscriminatory reason in this case, summary judgment in favor of [defendant] was proper.").

Cruz points to Col. Tougaw's "anger" in response to her email. P. Br. 30. But Col. Tougaw's labeling Cruz's concerns about Hunt as "unprofessional" would not enable a reasonable trier of fact to find but-for causation. Similarly, Cruz also references, as evidence of retaliatory motive, language that Col. Tougaw provided her for counseling a female who suggested that Meadows favored African-American males.[21] But even assuming *arguendo* that this language revealed retaliatory intent, it has no relevance to the causation issue in this case. Because it was not directed toward Cruz, it does not show that Col. Tougaw demoted her because of her protected activity.

---

[21]Col. Tougaw stated: "Making an assertion of bias or favoritism is a serious allegation and when mentioning such an issue to your leadership you must have sufficient foundation for making the claim." P. App. 149.

With only this evidence, a reasonable trier of fact could not find that Col. Tougaw changed his opinion about demoting Cruz based on her statements about the Hunt investigation or Meadows' discriminatory conduct in the Waco office. Because Cruz has not designated specific facts that would enable a reasonable trier of fact to find in her favor on her Title VII retaliation claim, the court grants the Secretary's motion for summary judgment and dismisses this claim with prejudice.

*    *    *

For the reasons stated, the court grants the Secretary's motion for summary judgment on Cruz's claims for Title VII discrimination and retaliation, denies Cruz's motion for partial summary judgment,[22] and enters judgment in favor of the Secretary dismissing this lawsuit with prejudice.

**SO ORDERED**.

December 14, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[22]Because the court is granting the Secretary's motion for summary judgment on Cruz's Title VII discrimination and retaliation claims, it need not address Cruz's motion for partial summary judgment on the Secretary's affirmative defenses.